OSCAR GOEGER

*v.*

ANNA GOEGER.

[Submitted June 27th, 1899.   Decided December 1st, 1899
Filed January 4th, 1900.]

</div>

Proof by the wife of her husband's forgiveness in words, his promise to receive her back to his home, and the conveyance of property to her while the question of her return was pending, for the purpose of showing his good faith, were not sufficient to show condonation of adultery where not followed by acts actually re-instating her as wife. As to the charge of adultery alleged in the cross-bill, the facts established by the evidence *held* insufficient to show the husband's adultery.

Heard on bill, answer and cross-bill, replication and proofs.

*Mr. Henry Hahn* and *Mr. Abner Kalisch,* for the complainant.

*Messrs. Johnson & German,* for the defendant.

EMERY, V. C.

The bill in this case is filed by the husband, charging his wife with adultery, committed with one Scheuplein in August, 1896,

at Greenwood Lake.   The answer of the wife denies the charge of the bill and sets up also the defence of condonation.  A cross-bill, filed with the answer, charges the husband with adultery with a woman named Siebler in July, 1895, and asks divorce. The proofs as to the defendant's adultery with Scheuplein, as charged, are so positive and derived from so many sources as to compel belief in the wife's guilt and to overcome entirely her denials, which constitute substantially the only evidence in her behalf in relation to the charge.   The paramour, a young man of eighteen, many years her junior, proves the guilty act, and he is fully corroborated by the wife's conduct and confessions to the husband and others subsequent to the alleged commission of the crime, and by her own letters written to her husband after he had expelled her from their home upon her confession of guilt.   Some of these letters refer to the commission of an offence or sin against her husband and children, and her explanation of these expressions, viz., that they referred merely to her allowing the young man to kiss her in her room one night, is altogether unsatisfactory.

I have read over and carefully considered again all the evidence on this point, and the arguments and briefs of counsel, and am confirmed in the decided impressions made upon me by the evidence at the hearing that the complainant has satisfactorily proved the adultery charged in the bill.

In reference to the defence of condonation the situation of the case on the proofs, in my judgment, is that the wife, upon whom the burden of the proof of this defence rests, has proved by the weight of evidence a forgiveness in words and a promise by the husband to receive her back to his home.   The husband denies this, but upon this point the wife is corroborated by the evidence of a witness who attended the interviews in the wife's counsel's office at the request of the husband, and who subsequently, at the husband's request, became the intermediary in a conveyance of real estate (of little or no value, as it afterwards turned out), which was made by the husband to the wife while the question of return was pending, and for the purpose of assuring her of his good faith.   These promises of the husband to take his wife

Goeger *v.* Goeger.

back were first made about April, 1897, and were repeated up to June of that year, but were not carried out, and the wife, in February, 1898, apparently abandoned hope of their being carried out, and returned to her native country in Europe, and the husband then gave her the sum of $400 and discontinued the weekly payments for her support which he had been making since he expelled her from home.  The important question which arises on this state of facts is whether a forgiveness by words merely and a promise to re-instate, or by words followed by acts, such as the conveyance of the property in connection with such promise, but not followed up by any acts or conduct which actually re-instated the offender in the condition she was before the transgression, show a sufficient condonation.  The question is a new one in this state, for the expression of Vice-Chancellor Van Fleet, in *Schackleton* v. *Schackleton, 3 Dick. Ch. Rep. 364, 367,* which is relied on as an authority to show that condonation may be by words alone, cannot, in my judgment, be taken as intended to settle the present question which was not involved in the decision of that case.  If the question is treated as one to be settled on principle, independent of authority, it would seem that inasmuch as condonation, where it has once taken place, entitles the offender thereafter to all marital rights, such vital and far-reaching consequence should not be fastened upon the injured husband unless he has in fact re-instated the guilty woman as his wife.  The language of Sir Cresswell, in *Keats* v. *Keats, 28 L. J. (Prob. & M.) 59; S. C., 5 Jur. (N. S.) 176 (1859),* which was approved by the court of appeal in *Bernstein* v. *Bernstein, Prob. Div. 292, 312 (1893),* as an accurate and clear statement of the law as to condonation, defines its effects " as a blotting out of the offence so as to restore the offending party to the position which he or she occupied before the offence was committed."  Forgiveness of the offence, whether it be evidenced by words or acts, is not necessarily legal condonation, which requires the forgiveness to be followed in fact by a reconciliation, in which the wife is re-instated to such conjugal cohabitation or connubial intercourse, as may be adapted to the circumstances of the parties.  An inclination or even an inten-

2

tion to condone is not sufficient if not followed by an actual re-instatement. This is the rule stated in *Keats* v. *Keats, 5 Jur.* (*N. S.*) *176, 178* (*1859*), and seems to me to be the only rule, which is just alike to the injured as well as the offending party in relation to the condonation of this offence. The cases which have been referred to as establishing the rule that forgiveness by words alone, not followed by acts or conduct from which a re-instatement of the guilty party to marital rights can be inferred, do not, so far as I have been able to examine them, support this contention. Upon the issue of condonation, I conclude, therefore, that the wife having proved only an inclination or intention to condone, which was not fully carried out and was not followed by her actual re-instatement as a wife, the offence committed has not been legally forgiven or condoned.

The last question arises on the charge of the adultery of the husband, committed, as the cross-bill alleges, with a woman named Siebler, in the spring of 1895. This woman, produced as a witness by the wife, swears to the husband's commission of the crime with her twice in the city of Newark at two different houses. Complainant, under oath, positively denies the charges. The account which the woman gave of the circumstances of the solicitation and yielding, and of her previous life, while they may not justify a conclusion that she is a common prostitute, show that she is not a woman of virtue or good character. The credibility of her statement under oath is shaken by the fact that she also charged another person with being the father of the illegitimate child which she now swears was the child of complainant. In view of complainant's denial, her uncorroborated testimony would not be a safe or proper basis for a decree of divorce. It is insisted that her testimony is sufficiently corroborated; but the facts and circumstances relied on as corroborating her proof of complainant's guilt are not facts or circumstances which themselves tend to prove that the crime she swears to, viz., the adultery with her, was in fact committed, but have no further extent or scope than to show a probability that she is telling the truth. The facts mainly relied on as corroborating proof of the husband's guilt are his absence from home

at night, the fact that he had previously suffered from a venereal disease (contracted, as he told his physician, while in the army), the visit of Siebler and of a friend in her behalf to complainant at his place of business to appeal for aid, and by the complainant's false account of the extent of his acquaintance with the woman. These facts and circumstances, if established, afford some basis for urging a probability that the woman is telling the truth in swearing that the defendant committed adultery, but none of them corroborate her statements as to the commission of the crime charged.     No person has been produced who saw the parties together or separately at either of the places named or at any other place, or saw any act or conduct of either of the parties which pointed in any way to the commission of the act charged.

Giving them all due weight in arriving at a conclusion, the circumstances and evidence relied on as to the probability of the truth of the witness' account, do not, in my judgment, afford sufficient corroboration of her evidence as to the charge, and in view of the complainant's denial of the charge upon his oath, it must be held that the charge is not proved and the cross-bill must be dismissed.